NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-990

COMMONWEALTH

vs.

OSCAR AQUINO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In October 2018, the defendant, Oscar Aquino, pleaded guilty in the District Court to assault and battery on a household or family member and to threatening to commit a crime. The following year, he submitted a motion to withdraw his guilty plea on the basis that plea counsel had not advised him of the immigration consequences of his guilty plea.  See Padilla v. Kentucky, 559 U.S. 356 (2010).  The same judge who had accepted his plea denied that motion, and the defendant now appeals.  We affirm.

Background.  During the plea colloquy, the prosecutor recited the following facts, all of which the defendant admitted to be true.  On February 26, 2018, the defendant and the victim got into an argument over the defendant's use of the victim's car.  The defendant became violent, and according to the victim,

slapped her multiple times in the face, pushed her to the floor, and threatened to kill her. The victim reported the incident to the police, to whom she also disclosed that the defendant had "a habit of physically abusing her whenever he gets mad" for the past year and a half. The officers took a photograph of the victim's face, which showed an abrasion running down the right side of her face.

The defendant was arrested the next day and charged with assault and battery on a household or family member and threatening to commit a crime. In March 2018, the defendant was charged with a violation of a G. L. c. 209A order after he contacted the victim. He was held without bail for 143 days after a judge determined he was a danger to the community under G. L. c. 276, § 58A.

As noted, the defendant pleaded guilty to the assault and battery and to threatening to commit a crime.[1] During the plea colloquy, the judge asked him if he had been forced or pressured to plead guilty, to which he responded that he had not. The judge also advised the defendant that it was "practically inevitable" that he would suffer immigration consequences if

---

[1] In consideration for the guilty plea, the 209A violation charge was dismissed by the Commonwealth.

either of the offenses to which he was pleading guilty mandated deportation.[2]  The defendant responded that he understood.

In his 2019 motion to withdraw his plea, the defendant argued that plea counsel did not advise him that crimes of domestic violence are deportable offenses.  See 8 U.S.C. § 1227(a)(2)(E)(i); 18 U.S.C. § 16.  He averred that if he had known the immigration consequences, he would have gone to trial instead.  Despite having admitted to all of the facts included in the Commonwealth's proffer at the plea hearing, the defendant submitted an entirely different version in an affidavit submitted in support of his motion.  In response to the defendant's motion, the Commonwealth submitted additional materials to the District Court, including evidence that the victim played for the officers voicemails from the defendant in which he threatened to have her killed.[3]

On April 29, 2019, the judge held an evidentiary hearing on the defendant's motion.  There, the defendant denied ever having struck the victim and claimed that she had instigated the argument.  He also offered various reasons why he thought she might lie about this.  According to him, he admitted that he had

---

[2] The judge's noncitizen warning comported with the requirements of G. L. c. 278, § 29D, and Mass. R. Crim. P. 12 (c) (3) (A) (iii), as appearing in 486 Mass. 1501 (2020).

[3] The victim later refused to give the recordings to the police.

struck and threatened the victim only because plea counsel had pressured him to do so and then advised him to lie about this to the judge.[4]

The defendant testified that plea counsel did not fully inform him of the immigration consequences of pleading guilty, and that, had he been informed, he never would have pleaded guilty. He recounted his substantial connections to the United States: he had full-time employment with a substantial annual income, owned a multifamily home that provided rental income, and had family members who had also lawfully immigrated and lived in the same city.

Plea counsel also testified. In recounting his plea discussions with the defendant, he stated that the defendant's primary concern was getting out of the house of correction. Plea counsel stated that he did not "recall [immigration consequences] being a big issue that day for [the defendant]," and that the defendant had told him he had consulted an immigration attorney. He stated that although he was prepared to go to trial, the "problematic" photograph of the abrasion on

---

[4] The defendant testified that when plea counsel discussed the plea deal with him at the house of correction where he was held, the attorney had another inmate translate for him. On January 26, 2021, plea counsel testified that he relied on an inmate to translate only one sentence and used a court interpreter for the rest of the plea discussion with the defendant.

4

the victim's face that police took on the day of the incident concerned him.

The judge credited plea counsel's testimony and discredited the defendant's. She nevertheless found that plea counsel's performance had been ineffective because -- as the Commonwealth conceded -- "[a]dvising a client to consult with an immigration attorney when deportation is presumptively mandatory is insufficient."[5] The judge further ruled, however, that the defendant had not been prejudiced by plea counsel's deficient advice. She specifically found that the Commonwealth's case was strong and that the defendant lacked a substantial defense. She further found that the defendant had not demonstrated the possibility of negotiating a better plea deal, or the existence of special circumstances sufficient to induce him to go to trial.

Discussion. To prevail on a Padilla claim, a defendant must show that plea counsel's performance was both defective and prejudicial. Padilla, 559 U.S. at 366, 369, 374, citing Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish prejudice, a defendant must show that, but for counsel's defective advice, the defendant would have not pleaded guilty and that such a decision would have been "rational under

---

    [5] The Commonwealth also conceded the ineffective performance of counsel at the hearing.

the circumstances." Commonwealth v. Clarke, 460 Mass. 30, 47 (2011), quoting Padilla, 559 U.S. at 1485. A defendant may do this by showing that:

> "(1) he had 'an available, substantial ground of defence' that would have been pursued if he had been correctly advised of the dire immigration consequences attendant to accepting the plea bargain; (2) there is a reasonable probability that a different plea bargain (absent such consequences) could have been negotiated at the time; or (3) the presence of 'special circumstances' that support the conclusion that he placed, or would have placed, particular emphasis on immigration consequences in deciding whether to plead guilty."

Clarke, supra at 47-48, quoting Commonwealth v. Saferian, 366 Mass. 89, 96 (1974), and Hill v. Lockhart, 474 U.S. 52, 60 (1985). We address each of the three ways of showing prejudice in order.

1. Substantial defense. In finding the case against the defendant "strong," the judge noted that the victim was available and willing to testify at trial, and that the police had a photograph to corroborate her testimony by showing a contemporaneous injury to her face (a photograph that defense counsel himself characterized as "problematic").[6] There was also

_____

[6] The defendant does not include the photograph to which plea counsel had referred in his record appendix. In an assented-to post-oral argument motion, the defendant has asked us to accept the photograph as a late-filed exhibit that the judge referenced in her decision. However, the photograph was never offered as an exhibit, either during the plea colloquy or at the evidentiary hearing on the defendant's motion to withdraw his plea. In addition, it is not at all clear on the record

evidence before the judge that the police had listened to voicemails that recorded the defendant threatening to have the victim killed.[7]

The defendant appears to assume that he would have had a substantial defense simply because he claims he would have testified at trial and told a different account of the incident. However, this ignores the fact that the judge (who also had accepted the defendant's plea) found the defendant not to be a credible witness.[8]  We discern no clear error in the judge's

_____

before us that the judge ever herself viewed the photograph, though it is possible that the photograph was included as part of the police reports the Commonwealth submitted as attachments in its opposition to the defendant's motion to withdraw his plea (those police reports are not included in either the defendant's record appendix or the Commonwealth's supplemental appendix). If the photograph itself was not before the judge, it cannot properly be part of the appellate record.  In the end, we need not resolve this question because we conclude that the actual photograph provides no appreciable assistance to the defendant's arguments on appeal.  We allow the defendant's motion to the extent necessary to allow us to reach that conclusion and otherwise deny it as moot.

[7] This evidence came from police reports which were submitted by the Commonwealth to the District Court.  The judge had the benefit of seeing the police reports, which the Commonwealth had submitted with its opposition to the motion to withdraw the plea, but the defendant has not included them in his record appendix.

[8] The parties have not briefed the extent to which the Commonwealth could have impeached the defendant at any retrial with the factual admissions he made at the plea hearing.  We do not rely on that, while noting the open issue.

7

finding that the defendant lacked a substantial defense at trial.

2.  Alternative plea agreement.  In his affidavit accompanying his motion, the defendant made a bare assertion that he might have been able to negotiate a better plea agreement.  However, he never supported that assertion with evidence, such as the plea negotiation policies or practices of the District Attorney.  The defendant does not press the issue on appeal and in fact acknowledges that "it is likely he would not have been able to negotiate a better plea deal . . . ."  In any event, as the Commonwealth notes, pleading guilty to any charges involving domestic violence would have resulted in the same immigration consequences.  There was no clear error in the judge's finding that the defendant would not have been able to negotiate a better plea agreement.

3.  Special circumstances.  The defendant further argues that the judge erred when she found that the defendant did not have special circumstances at the time of the plea agreement that would have caused him to opt for a trial.  As the defendant accurately points out, he had strong reasons for wanting to remain in the United States at the time he pleaded guilty:  a well-paying job, a home that generated rental income, and family members living nearby.  In addition, as a legal permanent

8

resident, the defendant had a viable path to United States citizenship.

Nevertheless, the mere presence of special circumstances is not enough to establish prejudice. A defendant must also show, as a matter of fact, that those special circumstances would have caused him to go to trial. See Commonwealth v. Lavrinenko, 473 Mass. 42, 59 (2015) (the existence of special circumstances does "not require the conclusion that there is a reasonable probability that the special circumstances would have caused the defendant to choose to go to trial"). The judge's decision reveals that she both understood the applicable law and acknowledged all of the facts that the defendant marshaled in his favor.[9] In the end, however, she found -- as a matter of fact -- that despite the defendant's interest in remaining in the United States, he still would have pleaded guilty. Although the defendant testified that he would not have pleaded guilty had he understood the immigration consequences, it was up to the judge whether to credit that testimony. See Commonwealth v. Scott, 467 Mass. 336, 344 (2014) (citation omitted) (hearing judge is "final arbiter on matters of credibility"). The

---

[9] The defendant highlights the judge's reference to the absence of any evidence that he would suffer harm if he returned to his native Dominican Republic. This was an appropriate factor for the judge to consider. See Lavrinenko, 473 Mass. at 58. Nothing suggests that the judge believed that the defendant could not show special circumstances absent such proof.

9

judge's finding also enjoys support in plea counsel's testimony that he "[did not] recall [immigration consequences] being a big issue" for the defendant on the day the defendant entered the plea agreement, and that the defendant's "primary objective at the time" was to get out of the house of correction.  The judge's finding that the defendant would not have opted for trial had plea counsel adequately informed him of the immigration consequences was not clearly erroneous.

Order denying motion to withdraw guilty plea affirmed.

By the Court (Milkey, Massing & Neyman, JJ.[10]),

Assistant Clerk

Entered:  May 13, 2024.

---

[10] The panelists are listed in order of seniority.